IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAVID CONNEY, M.D. )<br>)<br>Plaintiff, )<br>) Case No. 10CV1150<br>v. )<br>)<br>QUARLES & BRADY, LLP, )<br>MICHAEL SCHAALMAN, AND )<br>PAUL BAUER )<br>)<br>Defendants. )<br>) | |

## COMPLAINT

Plaintiff, David Conney, M.D ("Dr. Conney"), files this Complaint against Michael Schaalman ("Schaalman"), Paul Bauer ("Bauer"), and Quarles & Brady, LLP ("Quarles") (collectively, "Q&B") as follows:

### NATURE OF THE CASE

1. The claims asserted herein relate to the legal representation of Dr. Conney by Schaalman, Bauer and the law firm at which they are employed, Quarles, which practices from offices located in Illinois, Wisconsin, Arizona and Florida.

### PARTIES

2. Schaalman and Bauer are partners at Quarles and practice out of the firm's Milwaukee, Wisconsin office. Schaalman and Bauer participated personally and directly in Dr. Conney's representation. Schaalman and Bauer are citizens of Wisconsin. Quarles is a Wisconsin limited partnership with its principal place of business in Wisconsin.

3.      Dr. Conney retained Q&B to represent him in connection with investment losses incurred as a result of The Northern Trust Company's ("Northern") imprudent investment decisions for a trust of which Dr. Conney was both the settlor and the sole lifetime beneficiary. Dr. Conney is a citizen of California.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

5.      Venue in this Court is proper pursuant to 28 U.S.C.1391, as a substantial part of the events giving rise to the claim are to occur within the Eastern District of Wisconsin.

## FACTS

6.      In June 2003, Dr. Conney retained Q&B to represent him in a lawsuit against Northern.

7.      On October 21 2003, Dr. Conney, through Q&B, filed suit against Northern in Dane County Circuit Court, Wisconsin. The Complaint alleged causes of action against Northern for: (1) Breach of Fiduciary Duty; (2) Violation of Prudent Person Rule; (3) Securities Fraud; and (4) Injunction: Northern Should Be Precluded From Assessing Attorney Fees Against the Trust.

8.      Although Q&B could have included a negligence count in its Complaint against Northern, it did not do so. Significantly, under Wisconsin law, negligence is subject to a six-year statute of limitations.

9.      At the time that they filed the lawsuit, Q&B believed that a breach of fiduciary duty claim against a trustee was subject to *laches* and not any particular statute of limitations.

10. However, a few months before Q&B filed the lawsuit against Northern, the Wisconsin court of appeals published Beloit Liquidating Trust v. Grade, 266 Wis. 2d 388 (Wis. Ct. App. July 1, 2003) ("Beloit I"). In Beloit I, plaintiff appealed from the trial court's holding that plaintiff's breach of fiduciary duty claim was subject to Wisconsin's two-year statute of limitations for intentional torts. Without ruling on whether the two-year statute of limitations applies to a breach of fiduciary duty claim, the court of appeals reversed the trial court's finding on the basis that plaintiff filed its claim within two-years of discovering defendant's wrongdoing.

11. Before filing Dr. Conney's claims against Northern, Q&B should have carefully researched what statute of limitations could apply to those claims. If Q&B had done so, they would have (a) found the Beloit I decision, and (b) learned that there was a significant risk that a court would conclude that Dr. Conney's breach of fiduciary duty claim is barred by a two-year statute of limitations.

12. After Q&B file the Northern case, Northern removed it to federal court.

13. On April 6, 2004, the Wisconsin Supreme Court published an opinion in which it reviewed the decision in Beloit I. In Beloit Liquidating Trust v. Grade, 270 Wis. 2d 356 (Wis. 2004) ("Beloit II"), the Wisconsin Supreme Court held that "the two-year statute of limitations set forth in Wis. Stat. § 893.57 is applicable [to a breach of fiduciary duty claim], because a breach of fiduciary duty claim involves an intentional tort." Id. at 382.

14. Approximately one month later, on May 28, 2004, while the Northern case was still in federal court, Northern moved for summary judgment. Among other things, Northern argued that Dr. Conney's breach of fiduciary duty claim was barred by the two-year statute of limitations for intentional torts. Northern cited several cases in support of its argument, including Beloit II.

15. Less than one month later, in June 2004, Dr. Conney's case against Northern was remanded back to state court.

16. On November 16, 2004, Dr. Conney, through Q&B, filed an Amended Complaint which alleged: (1) Breach of Fiduciary Duty/Breach of Trust with Regard to Investments; (2) Breach of Fiduciary Duty/Self-Dealing; (3) Violation of Prudent Person Rule; (4) Securities Fraud; (5) Strict Liability Misrepresentation; (6) Intentional Misrepresentation; and (7) Negligent Misrepresentation.

17. By the time Q&B prepared and filed the Amended Complaint, they knew or should have known that there was a significant risk that Dr. Conney's breach of fiduciary duty claims would be barred by the two-year statute of limitations for intentional torts. Despite this knowledge, Q&B did not include a separate count for negligence, which has a six-year statute of limitations, in its Amended Complaint.

18. On July 25-26, 2005, both parties moved for summary judgment. Northern moved for summary judgment on each of Dr. Conney's claims. Among other things, Northern argued that Dr. Conney's breach of fiduciary duty claims (Counts I and II of the Amended Complaint) were subject to the two-year statute of limitations for intentional torts. This was the same statute of limitations argument that Northern had made in the motion for summary judgment that it previously filed in federal court.

19. Shortly before Northern filed its motion for summary judgment, the Wisconsin court of appeals published its opinion in Zastrow v. Journal Communications, Inc., 286 Wis. 2d 416 (Wis. Ct. App. 2005) ("Zastrow I"). In Zastrow I, several former employees brought a class-action against Journal Communications, its employees' stock trust and the trustees, alleging that the trustees "negligently" breached their fiduciary duties. Id. at 419. Defendants moved to

dismiss on the basis that the two-year statute of limitations for intentional torts applied, as opposed to the six-year statute of limitations for negligence actions. The trial court denied the motion, finding that there is a difference between claims of breach of fiduciary duty that are based on negligent conduct and claims that are based on conduct that is in bad faith. Id. at 422-23. On review, the court of appeals reversed, finding that (a) there is a well-established distinction between breach of fiduciary duty claims and negligence claims, and (b) the Wisconsin Supreme Court's decision in Beloit II made it clear that breach of fiduciary duty claims, even claims that the fiduciary duty was breached "negligently," are subject to the two-year statute of limitations.

20. On August 15, 2005, Q&B filed Dr. Conney's response to Northern's motion for summary judgment arguing, with respect to statute of limitations, that "a beneficiary's claim against a trustee is only time-barred 'if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.'" In support of that argument, Q&B cited case law that predated the enactment of Wis. Stat. §893.57, which sets a two-year statute of limitations for intentional misconduct torts. Reply briefs in support of the parties' respective motions for summary judgment were filed on August 26, 2005.

21. Q&B did not seek leave to amend the complaint to add a negligence count at any point during the briefing on Northern's motion for summary judgment.

22. On October 19, 2005, the trial court judge sent Northern and Dr. Conney a notice that the court of appeals decision in Zastrow I was under review by the Wisconsin Supreme Court and that the Supreme Court's decision could be relevant to the statute of limitations issue in Dr. Conney's case. With the agreement of the parties, the trial court delayed issuing a final

ruling on the motion for summary judgment until after the Wisconsin Supreme Court published its decision in Zastrow I.

23. Even though it should have been clear to Q&B at this point that the trial court was focused on the statute of limitations argument and even though the decisions in Beloit I, Beloit II and Zastrow I gave clear indications that Dr. Conney's breach of fiduciary duties claims could be barred by the two-year statute of limitations, Q&B nevertheless failed to move to amend the complaint to add a negligence count during the time (approximately one year) that the parties and the court waited for the Wisconsin Supreme Court to publish its review of the Zastrow I opinion. Significantly, the statute of limitations on Dr. Conney's negligence claim had not run yet -- it did not run until, at the earliest, November 2007.

24. On June 20, 2006, the Wisconsin Supreme Court published its review of the decision in Zastrow I. See Zastrow v. Journal Communications, Inc., 291 Wis. 2d 426 (Wis. 2006) ("Zastrow II"). In Zastrow II, the Wisconsin Supreme Court defined the issue as: "whether a claim for breach of fiduciary duty of loyalty must be intentional, or whether it can also be based on negligence." Zastrow, 291 Wis. 2d at 432. The Court held that, "there is a distinct difference between a claim for the breach of the fiduciary duty of loyalty and a claim for the breach of the duty of ordinary care, i.e., a negligence claim." Id. at 447-48. Notably, in that holding, the Court did not call the duty of ordinary care a "fiduciary" duty. The Court also held that:

> A breach of the duty of loyalty imports something different from mere incompetence; it 'connotes disloyalty or infidelity.' At its core, a fiduciary's duty of loyalty involves a state of mind, so that a claimed breach of that duty goes beyond simple negligence…Said otherwise, **'not every legal claim arising out of a relationship with fiduciary incidents will give rise to a claim for breach of fiduciary duty.'**

\*       \*       \*

> The concept that a fiduciary can comport with his fiduciary duty, but nevertheless violate the duty of ordinary care, also is supported by the standard set out in Wis. Stat. § 112.01(1)(c), the Wisconsin version of the Uniform Fiduciaries Act. Section 112.01(1)(c) states: 'A thing is done in good faith within the meaning of this section, when it is in fact done honestly, whether it be done negligently or not.' **Section 112.01(1)(c) recognizes that negligent conduct does not rise to the level of a breach of fiduciary duty.** We conclude that good faith is encompassed within what we have more succinctly referred to as the duty of loyalty that arises when a fiduciary role is accepted.

Zastrow, 291 Wis. 2d at 445 & 448. (Emphasis added.)

25. Thus, in Zastrow II, the Wisconsin Supreme Court held that Wisconsin does not recognize the existence of a negligent breach of the fiduciary duty. Stated another way, if a fiduciary breaches the duty of ordinary care, the proper claim to file is an ordinary negligence claim, not a breach of fiduciary duty claim. Applying its decision to the facts before it, the Wisconsin Supreme Court held that: (a) consistent with the trial court's findings of fact, defendants breached the fiduciary duty of loyalty; and, therefore, (b) the two-year statute of limitations applied. Zastrow, 291 Wis. 2d at 452-53.

26. The trial court in the Northern Case then ordered supplemental briefing regarding the impact of the Zastrow II decision on Northern's motion for summary judgment. On July 21, 2006, Q&B filed Dr. Conney's supplemental brief arguing that: (a) Zastrow II did not address the limitation period for a fiduciary's imprudent, but unintentional, violation of the standard of care set by the Prudent Person Rule; (b) his claims did not accrue until November 2001, when he learned that his trust had realized actual losses, or even later, when the probate court terminated his trust; and (c) if the trial court were to conclude that Dr. Conney discovered all of his injuries and their connection to Northern's conduct before October 31, 2001, and thus conclude that his breach of fiduciary duty claim is time-barred, Zastrow II and its predecessors clearly permit beneficiaries to bring claims against trustees for negligence or professional

negligence, which would be subject to a six-year statute of limitations. Even though Q&B had known or should have known that Dr. Conney's breach of fiduciary duty claims were time-barred, this supplemental brief was the first time that Q&B raised the prospect of adding a separate negligence count.

27. On August 24, 2006, the trial court granted Northern's motion for summary judgment with respect to the statute of limitations. After a detailed analysis of Zastrow II, the trial court ruled:

> Initially Conney contends that the Zastrow holding does not apply to his claims because he has not alleged a breach of fiduciary duty of loyalty. In other words, Conney argues that Zastrow does not apply to his Breach of Fiduciary Duty/Breach of Trust with Regards to Investments claim, which Conney depicts as a claim for breach of ordinary care, because he did not specify the Northern's breach of its duty of loyalty in his allegations. Rather, Conney characterizes this claim as a breach of Northern's duty to exercise the skill and care in investing required of professional trustees.
> Northern contends, and this court agrees, that Conney's breach of fiduciary duty claim is encompassed within the scope of the duty of loyalty. Moreover, as Northern asserts, Zastrow explicitly approved the Beloit decision holding that a breach of fiduciary duty is an intentional tort governed by Wis. Stat. §893.57.

28. The trial court went on to dismiss Dr. Conney's first cause of action (Breach of Fiduciary Duty/Breach of Trust with Regards to Investments claim) as well as his Second, Third, Fourth, Fifth and Sixth causes of action. The only issue remaining for trial was whether Northern made misrepresentations to Dr. Conney, either with strict liability, negligently, or intentionally, by failing to inform him that it had no internal "sell discipline" protocols.

29. In September 2006, Q&B asked the trial court to grant Dr. Conney leave to file a second amended complaint which proposed to add two new causes of action: professional negligence (Count Eight) and negligence (Count Nine).

30.     On September 12, 2006, the trial court denied Dr. Conney's motion.  In doing so, the court visited the history of the case, pointing out that the complaint was filed in October 2003 and that it is was then almost October 2006.  The court recognized that leave was granted in November 2004 to file an amended complaint and that summary judgment motions were filed by both parties in August 2005.   The court then pointed out that in the spring of 2006, the parties and the court were aware of the <u>Zastrow</u> case pending in the Supreme Court and that the trial date was re-set so that the parties could properly deal with <u>Zastrow</u>.  The court also stated that the matter was set for trial beginning November 6, 2006.  The trial court's reasoning for denial of Dr. Conney's motion for leave to amend is as follows:

> The Case Law tells me that my decision will be affirmed or upheld … except for a clear abuse of judicial power, so I do think as an appropriate exercise of my discretion given the length of time the matter has been pending, the fact that one amendment of the complaint has already been permitted, the fact that the experts have prepared their reports, and it would appear to me that they did not use a normal negligence standard, appropriately so, the fact that I think fairness compels that Northern have their day in court, I don't think it would be fair to the Court and to the defense to grant a continuance.  We would need to set a new briefing schedule, in all probability, revisiting the same standard, procurement of new claims, experts would have to take another look at the situation, new opinions and new trial date somewhere down the road and really what's driving and generating the request to add the new claims is the *Zastrow* decision.
>
> [N]othing has changed here except the Supreme Court's decision and its impact on one of the Plaintiff's claims stated in the first complaint and first amended complaint, and what that says is to close the door on one of the Plaintiff's primary claims.  I don't see that then adding a new claim that gets around the statute of limitations problem on one of the older claims falls under the category of when justice so requires because there has been ample, complete opportunity for  Conney to make that claim if there were a factual basis for it and if he felt he could prevail … I think that in fairness to the court calendar, the defense, and because I can't find justice so requires, I will not permit the complaint to be amended, and I think that position is confirmed by a reading of *Carl v.*

> *Spickler Enterprises*, 165 Wis. 2d 611, at page 623, and in that case the motion to amend came eight days before trial. That certainly isn't the case here. It's not that close a time frame. But it is a situation where if we gave the defense the normal time to respond in that case where millions of damages are claimed, I would have to grant a continuance to give the defense time for additional discovery so they would not be prejudice [sic], and so for all of those reasons I decline to permit the complaint to be amended.

31. Q&B filed an interlocutory appeal of the trial court's decision that refused to permit Dr. Conney to proceed to trial on a negligence or professional negligence theory, and also denied leave to amend the complaint. The appellate court declined to take the appeal finding that there were no sufficiently compelling reasons to warrant interlocutory review.

32. Dr. Conney then went to trial before a jury on the only issue remaining which related to whether Northern made misrepresentations to Dr. Conney, either with strict liability, negligently, or intentionally, by failing to inform him that it had no internal "sell discipline" protocols. The jury found against Dr. Conney.

33. Dr. Conney filed a post verdict motion challenging the pretrial summary judgment rulings and several evidentiary and instructional rulings at trial. On January 19, 2007, the trial court denied the motion.

34. On October 22, 2007, Dr. Conney (through different counsel) appealed from the trial court's rulings and the jury's verdict. However, among other reasons, because Dr. Conney was at great risk for payment of Northern's attorney's fees, he settled with Northern in June 2008.

35. Had Q&B properly pled a negligence claim against Northern, Dr. Conney would have succeeded on that claim before a jury.

## FACTS REGARDING ARBITRATION

36. During the course of Q&B's representation, several disputes arose regarding fees Q&B charged Dr. Conney. Dr. Conney believed those fees were excessive. Negotiations and discussions between Q&B and Dr. Conney led to execution of the April 6, 2006 arbitration agreement which states: "The parties agree to defer resolution of their fee dispute, if any, until after the Northern Trust litigation is settled or judgment is entered in the trial court…" (See, Exhibit 1 attached hereto.)

37. Dr. Conney's claims against Q&B for (1) professional negligence, and (2) excessive fees, arise out of the same nucleus of operative facts. For example, as a result of Q&B's negligence, Dr. Conney was charged for work that was of no value. Moreover, much of Q&B's fees resulted from efforts on Q&B's part to defend against a statute of limitations argument that would not have existed but for Q&B's negligence, and upon losing that argument, their futile efforts to amend the complaint to add a negligence claim. These fees would not have been incurred had Q&B not been negligent. Because Dr. Conney's claim for professional negligence is inextricably related to his claim that he was charged and paid excessive fees, both claims are arbitrable under the April 6, 2006 arbitration agreement.

## COUNT I
## ARBITRATION

38. Dr. Conney realleges paragraphs 1 through 37 as paragraph 38 herein.

39. Q&B agreed to arbitrate all claims relating to the reasonableness of its fees.

40. Because the unreasonableness of Q&B's fees is inextricably intertwined with Q&B's negligence, Q&B should be compelled to arbitrate Dr. Conney's professional negligence claim with his excessive fee claim.

**WHEREFORE**, Dr. Conney respectfully requests that this matter be stayed and that Q&B be compelled to arbitrate Dr. Conney's claims of professional negligence pursuant to the parties' April 6, 2006 arbitration argument.

## COUNT II
### DR. CONNEY'S CLAIM FOR PROFESSIONAL NEGLIGENCE AND EXCESSIVE FEES AGAINST Q&B

41. Dr. Conney realleges paragraphs 1 through 37 as paragraph 41 herein.

42. As his attorneys, Q&B had a duty to Dr. Conney to exercise care in its representation and to act as a reasonable professional would do in the same or similar circumstances. In other words, an attorney is held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession, and, if injury results to the client as a proximate consequence of the lack of such knowledge or skill, or from the failure to exercise it, the client may recover damages to the extent of the injury sustained.

43. Q&B breached its duty of care by (a) failing to plead a negligence claim against Northern at the outset of the case, (b) failing to add a negligence count when it amended the complaint in November 2004, (c) failing to amend the complaint to add a negligence count during the year that the parties waited for the Wisconsin Supreme Court to publish Zastrow II, and (d) recommending to Dr. Conney that he go to trial on the one remaining issue against Northern (the "lack of sell-discipline claim").

44. Had Q&B not breached its duty of care, Dr. Conney (a) would have stated a claim for negligence against Northern that would not have been barred by the two-year breach of fiduciary duty statute of limitations, and (b) would not have gone to trial on the "lack of sell-discipline claim."

45. Had a negligence claim been pled against Northern, Dr. Conney would have been able to present at least one claim to the jury involving Northern's imprudence in losing over $2 million of his trust principal and would have been able to succeed on that claim. Moreover, Dr. Conney would not have incurred fees to: (a) defend against the statute of limitations argument; (b) attempt to amend the complaint to add the negligence claim; (c) try a virtually unwinnable misrepresentation by omission claim (the lack of sell-discipline claim); (d) incur needless appellate fees as an appellant. Thus, but for Q&B's negligence, Dr. Conney would have been successful in an underlying negligence claim against Northern – and would not have incurred wasteful and unnecessary charges by Q&B.

46. Q&B's initial fee estimate for the case in 2003 when Dr. Conney was deciding whether to pursue a case against Northern through trial was $300,000 to $400,000. Dr. Conney believed that his damages were approximately $1.2 to $2.4 million. He was also told that he may be able to recover his attorneys' fees. Dr. Conney was not advised until one year later that he was at risk for paying Northern's fees.

47. From the outset, Dr. Conney repeatedly requested that Q&B prepare a written litigation budget for total legal fees through trial. Approximately one year after receiving Q&B's initial $300,000 to $400,000 fee estimate, Q&B estimated that it would cost Dr. Conney an additional $360,000 going forward, on top of $265,484 already billed, which included $65,243 to terminate the qualified subchapter-S trust. Thus, Q&B's July 2004 total budget through trial was on the order of $560,000. Total paid legal fees to Q&B through trial were $783,025.

48. Q&B's fees were excessive and much of its fees were unnecessary because they were incurred as a result of Q&B's negligence. A substantial amount of the fees related to Q&B's unsuccessful efforts to mitigate the loss of Dr. Conney's breach of fiduciary duty claim

-13-
Case 2:10-cv-01150-LA    Filed 12/21/10    Page 13 of 14    Document 1

due to the running of the statute of limitations and to Q&B's failure to adequately plead a negligence claim.

49. Moreover, Dr. Conney incurred additional legal fees in pursuing the appeal against Northern of the trial court's decision regarding the statute of limitations and leave to amend the complaint to allege a cause of action for negligence. Those fees would not have been incurred but for Q&B's negligence.

**WHEREFORE**, David Conney prays for relief from each of the defendants, jointly and severally, as follows:

    A.    A refund of the fees that are found to be excessive;

    B.    Compensatory damages in an amount equal to the amount Dr. Conney would have been awarded on a negligence claim against Northern;

    C.    Compensatory damages in an amount equal to any amounts expended on the appeal or otherwise as a result of Q&B's negligence; and

    D.    Such other and further relief as the court may deem just and proper.

Respectfully submitted,

DAVID CONNEY, M.D.

By: s/ Edward T. Joyce
Edward T. Joyce, 01371835
Attorney for Plaintiff
Edward T. Joyce & Associates, P.C.
135 S. LaSalle Street, Suite 2200
Chicago, IL 60603
Telephone: (312) 641-2600
Fax: (312) 641-0630
E-mail: ejoyce@joycelaw.com