UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

DAVID CONNEY, M.D.,

    Plaintiff.

v.

QUARLES & BRADY, LLP, MICHAEL
SCHAALMAN, and PAUL BAUER,

    Defendants.

Case No. 10-CV-1150

---

### DEFENDANTS' TRIAL BRIEF

---

Since its filing more than eight years ago, this case has been reduced to a single cause of action for professional negligence against two defendants: Quarles & Brady LLP ("Quarles") and Michael Schaalman ("Schaalman"). Plaintiff, David Conney, M.D. ("Conney"), alleges that Quarles and Shaalman were negligent in evaluating a lawsuit Conney brought in the circuit court for Dane County, Wisconsin. Conney claims that Quarles and Schaalman are liable for fees and costs that he paid to certain experts and non-Quarles attorneys while prosecuting that suit.

The evidence at trial will show that Conney's sole cause of action lacks merit. Conney will be unable to carry his burden of proving, not merely that his suit was unsuccessful, as many lawsuits must be, but that Quarles and Schaalman failed to exercise reasonable skill and care when evaluating Conney's claims based on the information then available. So, too, will Conney fail to carry his burden of proving that any supposed negligence caused him to incur the fees and costs -- none of which were paid to Quarles or Schaalman -- that he claims as damages. Trial will show that Conney's remaining claim must be dismissed.

# PROCEDURAL BACKGROUND

### A. The Parties, Conney's Lawsuit against Northern Trust, and Conney's Claims against the Defendants.

Conney is a former client of Quarles. (Doc. 35, Amended Complaint ("Am. Compl."), ¶¶ 15-16) Quarles represented Conney in two separate matters relating to a trust that benefited him: (1) a successful action to terminate that trust; and (2) a lawsuit against Northern Trust (the trustee), seeking to recover investment losses that Conney suffered as the trust's beneficiary. (Id., ¶ 16) Schaalman and a former co-defendant, Paul Bauer ("Bauer"), were principally responsible for representing Conney in these matters, working out of Quarles' Milwaukee office. (Id., ¶ 12)

Conney's claims in this action concern the lawsuit he prosecuted against Northern Trust, David Conney, M.D. v. The Northern Trust Company, Case No. 03-CV-3325, Circuit Court for Dane County, Wisconsin ("the Northern Trust Lawsuit"). (See Id., ¶¶ 1, 9, 37, 45-55) Conney lost each claim that he asserted in the suit, either on pretrial motions or upon an adverse verdict reached by the jury that tried one of his claims. (See Id., ¶¶ 26, 31, 37) He appealed his loss to the Wisconsin Court of Appeals but settled with Northern Trust after briefing was completed but before a decision was rendered.

In this action, Conney alleges that, at the outset of the Northern Trust Lawsuit, Quarles and Schaalman "failed to recognize and advise Conney that the risks of the lawsuit could easily defeat his claim in its entirety, or at the very least increase the fees and costs so substantially that an hourly fee agreement was not economical and therefore not reasonable." (Id., ¶ 3) Conney claims that, "but for Defendants' negligent pre-filing assessment of the Northern Trust Lawsuit, and their negligent failure to properly advise Dr. Conney about the risks and costs of the lawsuit,

Dr. Conney would not have prosecuted the [Northern Trust] Lawsuit in the manner that he did…" (Id., ¶ 44)

## B. Conney's Initial Complaint and Recovery of the Fees He Paid Quarles to Prosecute the Northern Trust Lawsuit.

The initial complaint in this action asserted two counts: (1) a claim seeking to compel Quarles to arbitrate all of Conney's claims; and (2) a claim alleging both "professional negligence" and "excessive fees." (Doc. 1, Complaint ("Compl."), ¶¶ 38-49) This Court ordered the parties to arbitrate Conney's excessive fee claim, but not his claim for professional negligence. (Doc. 18, Order; Doc. 35, Am. Compl., ¶ 1)

Conney's excessive fee claim was arbitrated by Michael Conway. (Doc. 35, Am. Compl., ¶¶ 2-5) Conway represented Conney throughout the Northern Trust Lawsuit, including by consulting with Conney and Quarles on litigation strategy and commenting on draft documents prepared by Quarles. As arbitrator, Conway ordered Quarles to disgorge all the fees Conney had paid to it, except for a stipulated amount relating to the action to terminate Conney's trust and to Quarles' initial investigation of Conney's potential claims against Northern Trust. (Id., ¶ 6) Thus, the fees that Conney paid to Quarles to prosecute the Northern Trust Lawsuit already have been disgorged. (Id., ¶ 43)

## C. Conney's Amended Complaint.

Conney's amended complaint in this action asserted two counts, both for professional negligence. (See Id., ¶¶ 45-55) In Count I, Conney alleged that the defendants were negligent in their pre-filing evaluation of the Northern Trust Lawsuit. (See Id., ¶¶ 44, 46-48) On that basis, he sought compensation for fees and costs that he paid to certain experts and non-Quarles attorneys in connection with the action. (See Id., ¶¶ 43-49, p. 15, ¶ A) In Count II, Conney

3

alleged that Quarles "caused [him] to lose the Northern Trust Lawsuit" by failing to timely plead a claim against Northern Trust for professional negligence. (Id., p. 15 (Heading), ¶ 51)

> **D.    The Dismissal of Bauer and of Count II of Conney's Amended Complaint as to All Defendants.**

In August 2018, Quarles, Schaalman, and Bauer moved for partial summary judgment dismissing (1) Count II of Conney's amended complaint as to all defendants; and (2) the entire amended complaint as to Bauer. (Doc. 65, Defendants' Motion for Partial Summary Judgment) The defendants sought dismissal of Count II of Conney's amended complaint primarily because -- although the claim alleged that Quarles "caused Dr. Conney to lose the Northern Trust Lawsuit" by failing to timely plead a claim for professional negligence -- Conney's own liability expert testified that his negligence claim against Northern Trust was never a likely winner. (See Doc. 66, Defendants' Brief in Support of Their Motion for Partial Summary Judgment, pp. 8-15) Defendants sought dismissal of the entire action as to Bauer because Conney adduced no expert opinion testimony to support his conclusory claim that Bauer was negligent. (Id. at p. 19)

Conney did not oppose defendants' summary judgment motion. Instead, he stipulated to the dismissal, with prejudice, of each claim defendants had challenged. (Doc. 70, Stipulation) This Court dismissed those claims the next day. (Doc. 72, Order)

Now, only two defendants -- Quarles and Schaalman -- are left in this case. Only a single professional negligence claim remains to be tried against them: Count I of the amended complaint.

**ARGUMENT**

I. **CONNEY HAS THE BURDEN OF PROVING THAT SCHAALMAN AND QUARLES FAILED TO EXERCISE REASONABLE SKILL AND CARE IN EVALUATING HIS SUIT AND THAT ANY SUCH FAILURE PROXIMATELY CAUSED THE FEES AND EXPENSES THAT HE CLAIMS AS DAMAGES.**

Conney has the burden of proving that Quarles and Schaalman committed negligence as alleged in his amended complaint. See Lewandowski v. Contl. Cas. Co., 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979) ("[T]he client has the burden of proving…the acts constituting the alleged negligence…"). This element requires proof that Quarles and Schaalman failed "to exercise that degree of knowledge, care, skill, ability and diligence usually possessed and exercised by members of the legal profession in this state." Pierce v. Colwell, 209 Wis. 2d 355, 362, 563 N.W.2d 166 (Ct. App. 1997). "This determination is a mixed question of fact and law, because the trier of fact is confronted with a dual problem -- what, in fact, did [the attorney] do or fail to do in the particular situation, and what would a reasonable or prudent attorney have done in the same circumstance." Helmbrecht v. St. Paul Ins. Co., 122 Wis. 2d 94, 112, 362 N.W.2d 118 (1985).

Demonstrating such negligence requires more than proof of any mistake or misjudgment. "[A]n attorney is bound to exercise his best judgment in light of his education and experience, but is not held to a standard of perfection or infallibility of judgment." Helmbrecht, 122 Wis. 2d at 111. "Generally, an attorney is not required to exercise perfect judgment in every instance." Id. at 117. "He is not a guarantor of the results and will not be held accountable for an error in judgment if he acts in good faith and his acts are well-founded and in the best interest of his client." Id.

Nor may negligence be shown by means of Monday morning quarterbacking an attorney's judgments. "'A fair assessment of attorney performance requires that every effort be

5

made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Id. at 116 (quoting Strickland v. Washington, 466 U.S. 668 (1984)). "A lawyer would need a crystal ball, along with his library, to be able to guarantee that no judge, anytime, anywhere, would disagree with his judgment or evaluation of a situation." Denzer v. Rouse, 48 Wis. 2d 528, 534, 180 N.W.2d 521 (1970), overruled on other grounds by Hansen v. A.H. Robins, Inc., 113 Wis. 2d 550, 335 N.W.2d 578 (1983).

In addition to proving negligence, Conney also has the burden of demonstrating that any negligence proximately caused the attorney fees and other expenses that he claims as damages under Count I of his amended complaint. "[T]he client has the burden of proving…that the negligence [of the attorney] was the proximate cause of the injury, and the fact and extent of the injury alleged." Lewandowski, 88 Wis. 2d at 277.

## II.  CONNEY WILL NOT CARRY HIS BURDEN OF PROVING ANY FAILURE TO EXERCISE REASONABLE SKILL AND CARE.

"Expert testimony is generally required to establish the standard of care and breach of duty in a malpractice action." Thiery v. Bye, 228 Wis. 2d 231, 245, 597 N.W.2d 449 (Ct. App. 1999); see also Helmbrecht, 122 Wis. 2d at 112 ("Expert testimony is generally necessary in legal malpractice cases to establish the parameters of acceptable professional conduct, given the underlying fact situation."); Pierce, 209 Wis. 2d 355 at 361-63 (affirming summary judgment dismissal of a malpractice suit for lack of expert testimony).

Conney's liability expert is John Cabaniss. In his Rule 26(a)(2) report, Cabaniss opines that Schaalman failed to exercise reasonable care in how he evaluated the Northern Trust Lawsuit. (Doc. 68-5, Cabaniss Expert Report) Cabaniss bases his opinions largely on the premise that Schaalman ought to have concluded that Quarles' hourly fees -- all of which have

now been returned to Conney -- likely would be prohibitive given Cabaniss's unfavorable assessment of the merits of the Northern Trust Lawsuit. (Id.)  Having this low view of the suit's merits, Cabaniss does not opine that Schaalman or Quarles were responsible for Conney's loss. (Id.)  Cabaniss testified that the Northern Trust Lawsuit "was always unlikely to be successful in any respect…regardless of who handled it."  (Nov. 15, 2012 Cabaniss Depo. Tr., pp. 126-27)

At trial, Cabaniss's testimony will be limited to these opinions disclosed in his Rule 26(a)(2) report.  See Fed. R. Civ. P. 26(a)(2)(B)(i) (an expert's written report "must contain…a complete statement of all opinions the witness will express and the basis and reasons for them"); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information…as required by Rule 26(a)…the party is not allowed to use that information…to supply evidence…at a trial, unless the failure was substantially justified or is harmless.").

Cabaniss's testimony will be rebutted by both Schaalman as well as the defendants' retained expert, Claude Covelli.  Collectively, the trial testimony will show that Cabaniss's opinions fail "to eliminate the distorting effects of hindsight," Helmbrecht, 122 Wis. 2d at 116, and impermissibly treat Shaalman and Quarles as guarantors against the inherent unpredictability of litigation.  As the testimony will show, Schaalman judged and advised Conney that he had approximately a 35% chance -- not a trivial possibility -- of losing every one of his claims in the Northern Trust Lawsuit.  That judgment was entirely reasonable given the information available to Schaalman at the time.  And, while Conney's suit ultimately did fail, this occurred only after Schaalman and Quarles succeeded in surviving summary judgment and trying Conney's case to a jury.  Moreover, Conney failed at trial predominantly because the jury did not find Conney himself credible.  Schaalman and Quarles cannot be held liable because a significant risk of loss, which Schaalman comprehended and appropriately advised his client about, turned into an actual

loss for Conney when it came time for the jury to pick a winner and a loser in the case.

### III. CONNEY WILL NOT CARRY HIS BURDEN OF PROVING CAUSATION.

Although Conney continues to fault Schaalman for entering into an hourly fee arrangement with him, ultimately he received all of Quarles' services in the Northern Trust Lawsuit for free. The arbitration award against Quarles, which was rendered by another attorney whom Conney paid to represent him throughout the Northern Trust Lawsuit, returned to Conney every dollar spent on the services that he now claims were negligent.

Conney, however, claims as damages certain fees and costs that he paid to parties other than Quarles (or to the attorney/arbitrator Michael Conway, whose fees from the Northern Trust Lawsuit Conney singularly does not treat as "damages"). Conney has categorized these alleged damages as follows:

| Attorney | Fees | Costs |
| --- | --- | --- |
| Weston Benshoof | $3,506.00 | N/A |
| Rackemann Sawyer | $132,145.99 | $4,738.22 |
| Whyte Hirschboeck | $234,653.00 | $1,260.12 |
| Reinhart Boerner | $239,860.75 | $52,795.98 |
| Bassford Remele | $15,093.83 | $50.66 |
| RSM McGladrey | $13,000.00 | N/A |
| William Wilkie | $40,133.45 | N/A |
| Godfrey Kahn | $15,000.00 | N/A |
| David Deininger | $6,250.00 | N/A |
| Edward White & Co. | $26,770.00 | N/A |
| Dr. Conney Trial Expenses | N/A | $13,477.00 |
| **Total** | **$726,413.02** | **$72,321.98** |

(Doc. 68-6, Resp. to Int. 6, Ex. A) Weston Benshoof is a firm that Conney retained in connection with a complaint he considered filing against Northern Trust in California, early in the case. Rackemann Sawyer was the law firm that employed Hanson Reynolds, an attorney who (like Michael Conway) represented Conney before he connected with Quarles, and whom Conney continued to use throughout the Northern Trust Lawsuit. Whyte Hirschboeck was a

Wisconsin firm that represented Conney with his fee dispute with Quarles and began working for Conney before the Northern Trust Lawsuit trial, and continued to do work in connection with Conney's appeal. Reinhart Boerner was Conney's principal counsel in the appeal. Bassford Remele, Godfrey & Kahn, and David Deininger all apparently did work in connection with the appeal as well. RSM McGladrey and William Wilkie performed expert work during the Northern Trust Lawsuit, in collaboration with Schaalman and Quarles. Edward White & Co., a CPA firm in California, apparently addressed concerns with the settlement agreement with Northern Trust and analyzed contingent fee proposals for Quarles to handle Conney's claims on a contingent basis.

As a preliminary matter, Conney will have the burden of proving that he in fact paid all the sums alleged in his table. "[T]he fact and extent of the injury alleged" is an element of his claim. Lewandowski, 88 Wis. 2d at 277.

Conney also will have the burden of proving that Schaalman's purported negligence proximately caused any expenditures that Conney can show he made. Importantly, only a small portion of the fees alleged in Conney's table -- the $40,133 that he claims he paid to William Wilkie, and the claimed $13,000 to RSM McGladrey -- relate to experts who were retained to further Schaalman's litigation strategy. Otherwise, Conney will be unable to show that Schaalman proximately caused Conney to pay the alleged amounts to third parties, and still less that Schaalman's purported negligence did so.

Conney will need to carry these burdens without the benefit of testimony from his liability expert. Cabaniss's Rule 26(a)(2) report disclosed no opinions relating to the appropriateness of or the reason for any of the fees or expenses that Conney claims as damages. Cabaniss will not be able to opine on such matters at trial. See Fed. R. Civ. P. 26(a)(2)(B)(i);

Case 2:10-cv-01150-LA   Filed 01/03/19   Page 9 of 11   Document 81

9

Fed. R. Civ. P. 37(c)(1).

The evidence at trial will show that a large sum of Conney's alleged damages consist of fees that Conney paid to other attorneys whom he elected to retain -- *in addition* to Quarles and Conway -- to represent him in connection with the Northern Trust Lawsuit. Conney's alleged payments to Rackemann Sawyer, as well as a large fraction of the alleged payments to Whyte Hirschboeck, fall into this category.

Conney will be unable to prove that any alleged negligence caused him to incur these fees. Schaalman did not advise Conney to retain and pay multiple law firms and attorneys in connection with the same lawsuit. It was *Conney's* decision to pay for representation by a second, third, and even fourth layer of attorneys, none of whom contemporaneously told Schaalman that they disagreed with the judgments that Conney now claims were negligent.

Conney also will be unable to prove that the fees spent on his appeal in the Northern Trust Lawsuit were caused by any negligence by Schaalman. Given the opinions of his liability expert, as well as the dismissal of Count II of his amended complaint, Conney no longer is claiming that Schaalman and Quarles caused him to lose the Northern Trust Lawsuit, thus necessitating any rehabilitation on appeal. Cabaniss opines that Schaalman and Quarles should have advised Conney to pursue the Northern Trust Lawsuit no further than a ruling a motion to dismiss. (Doc. 68-5, Cabaniss Expert Report, p.2.) He does not opine that Schaalman and Quarles should have (or even could have) won the case at trial.

Nor did Schaalman advise Conney how to conduct his appeal or how much to invest in it. Conney spent apparently more than $250,000 on the appeal because, as he testified in his deposition, his attorneys at Reinhart Boerner advised him that "it was a good, strong appeal" which, if successful, would result in a "new trial" covering "a wider scope of issues than [he] had

been permitted to try the first time." (Apr. 10, 2018 Conney Depo. Tr., pp. 249-250)  This assessment -- that Conney had a "good" and "strong" case even after his loss at trial -- contradicts Conney's claim that Schaalman was negligently optimistic in his pre-filing evaluation.  More importantly for purposes of Conney's "causation" case, Schaalman and Quarles cannot be faulted for the fact that Conney invested significantly in his appeal after a *second* firm appraised his case favorably.

## CONCLUSION

As explained above, the evidence at trial will show that Conney's remaining claim in this action lacks legal or factual merit.

Respectfully submitted at Milwaukee, Wisconsin, this 3rd day of January, 2019.

By:    s/Terry E. Johnson
      Terry E. Johnson, SBN 1016704
      von Briesen & Roper, s.c.
      411 E. Wisconsin Avenue, Suite 1000
      Milwaukee, WI  53202
      414-221-6605
      tjohnson@vonbrisen.com

Attorneys for Defendants, Quarles & Brady, LLP, Michael Schaalman, and Paul Bauer

32427705_1.DOC